The Commonwealth of Pennsylvania, Appellant, *v.* Amos H. Mylin, Benjamin J. Haywood, Samuel J. M. McCarrell and Henry K. Boyer, and the said Amos H. Mylin, as Auditor General.

*Equity—Preliminary injunction—Public contract—Capitol buildings— Act of April* 14, 1897.

A preliminary injunction to restrain the commissioners appointed under the Act of April 14, 1897, P. L. 19, to build a capitol building, from awarding a contract, will not be granted, where the averments of the bill are, in effect, that the plans contemplated an incomplete building instead of a complete one; that the building would not be fire proof; that it would cost in excess of the amount appropriated, and that the contract was to be let without competition, which averments are all denied by the sworn answer, and the evidence offered is insufficient to overcome the answer.

Argued March 1, 1898. Appeal, No. 7, May T., 1898, by plaintiff, from decree of C. P. Dauphin Co., No. 241, equity, refusing a preliminary injunction. Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Bill in equity for an injunction to restrain the awarding of a contract to build the capitol buildings at Harrisburg.

The allegations of the bill were as follows:

Under the provisions of the act of April 14, 1897, the commissioners of public buildings and grounds, together with the

president pro tempore of the senate and the speaker of the house of representatives, were constituted a commission to erect a new capitol building, which building was to be erected with the least possible delay, as nearly fireproof as possible, ready for occupancy not later than November 15, 1898. By the same act of assembly the commissioners were limited to the sum of $550,000, for the erection and construction of said building, including the fees of the architect.

The said commissioners organized and took into their employment, as architectural adviser, Warren P. Laird, of the University of Pennsylvania, who prepared and promulgated a programme setting forth the requirements of the proposed capitol building, and the commissioners then requested architects to compete, by the exhibition of plans, the prize to be awarded being that of architect for the proposed new building.

The architects throughout the country did so compete and a large number submitted drawings and plans, but four of the commissioners, the defendants in this case, rejected all of such drawings and plans, and also the report of the board of experts as to which of those plans were best. Against this action, Daniel H. Hastings, one of the commissioners, protested, as an act of bad faith to the competing architects, and in violation of the written agreement upon the part of the commissioners.

The four defendants, composing a majority of the commission, after rejecting said drawings and plans, took into their employment one Henry Ives Cobb, and have caused to be made certain drawings, plans and specifications for the erection of a new capitol building, assuming to act by virtue of the authority of the act of assembly above referred to.

After the preparation of the plans, drawings and specifications by said Henry Ives Cobb, the said commission advertised for sealed proposals for the general construction of the new capitol building according to such plans and specifications, which could be seen in the Supreme Court room, at Harrisburg.

The drawings, plans and specifications were examined and inspected by those who desired to become bidders.

The only legal authority for the erection of a capitol building is contained in said act of April 14, 1897, and the powers vested in said commission must be exercised in the manner and within the limitations provided in said act.

The plans and specifications call for a building not fireproof, but readily combustible.

The opening for a future dome is to be trussed over with timber trusses, the roof formed of boards, covered with tarred felt, pitch and sand. A common board underflooring is specified, and all doors are temporary, while the stairs throughout the building, including the main entrance steps, are marked "temporary," and are of wood. The partitions are of seven-eighth inch matched pine fencing, and the guard rails are all wood.

The act of assembly requires the contract to be let to the lowest responsible bidder who will complete and deliver the building not later than November 15, 1898, while the specifications provide for general construction only, and that the contractor shall have until November 15, 1898, to furnish the material and do the work of an incomplete building. The drawings and specifications entirely omit heating and ventilation, gas or electric lighting, plumbing, water supply and drainage, interior finish, such as marble, tile or mosaic, millwork and joinery, and finished floors, furring on the outside walls and roof arching, as well as elevators. The specifications omit balustrades and all carving, while the drawings show all this work completed. In the senate and house chambers, the rotunda and a number of rooms, plastering is omitted. Temporary roofs are provided for.

The appropriation is provided to be paid by the state treasurer upon warrants drawn by the auditor general, who is Amos H. Mylin, one of the defendants.

The intent and meaning of the act of assembly was that a completed building should be erected, and in the future other buildings were to be added for executive and departmental purposes, while the plans and specifications provide for the construction of an incomplete part of a larger structure for the use, not only of the general assembly, but for executive and departmental purposes as well.

The proposed building will contain over four millions of cubic feet, and will cost, at the moderate estimate of thirty cents a cubic foot, more than $1,200,000, and will require the addition of a wing at each side, shown in the elevation of the structure, which it is anticipated to ultimately erect, while the

commission is forbidden to contract for any expenditure in excess of the sum of $550,000, including the architect's services.

The plans and specifications are for work of an initiatory character only, and to complete the work will require the expenditure of many millions of dollars. To permit said work to proceed according to said plans and specifications would greatly damnify the commonwealth and impose burdens upon the taxpayers not contemplated by, and in violation of the provisions of, said act of assembly. The letting of any contract or contracts, pursuant to such plans and specifications, is without authority of law and in violation of the express provisions of the statute.

On February 7, 1898, the bids made upon the plans and specifications, as prepared by said Henry Ives Cobb, were opened by the commission and are as follows: McIlvaine-Unkefer Company, Pittsburg, per specifications, $1,167,000; first modification, $508,362; second modification, $499,300; P. J. Carlin, Brooklyn, one of the builders of the Albany capitol, per specifications, $926,438; first modification, $916,458; second modification, $485,756; Edward S. Williams & Co., Scranton, per specifications, $1,022,808; first modification, $495,000; second modification, $489,000; H. Schuddemage, Harrisburg, per specifications, $939,750; first modification, $914,750; R. A. Malone, Lancaster, per specifications, $1,000,000; fifteen modifications, ranging down from $985,700 to $542,132; Norcross Brothers, New York, per specifications, $1,385,000; first modification, $1,155,000; Allen B. Rorke, Philadelphia, per specifications, $1,100,000; first modification, $525,000; William G. Ball and William H. Jones, Harrisburg, per specifications, $977,500; first modification, $907,000; second modification, $505,000; third modification, $498,000; fourth modification, $428,000.

The commissioners propose and intend to let a contract to some one of the aforesaid bidders according to the plans and specifications made by such bidder as modifications of the plans and specifications upon which bids were invited, which would be in violation of that provision of the act of assembly requiring two weeks' public notice previous to awarding the contract for the construction of said new building, and would be the acceptance of a bid without competition.

The prayers of the bill were:

1. That the defendants be restrained from proceeding to let any contract or contracts for the erection of the capitol building based upon the plans and specifications referred to.

2. That they be restrained from authorizing the payment out of the state treasury or any indebtedness heretofore contracted or that may hereafter be contracted in the preparation of the plans and specifications referred to, or for any other purpose in any wise connected therewith.

3. That Amos H. Mylin, auditor general, be restrained from drawing any warrant upon the state treasurer for any expenses contracted by said commission under or about said plans and specifications, or on account of any contract or contracts heretofore made or to be made by said commissioners for the erection and construction of said capitol building under said plans and specifications.

3½. That said defendants be restrained from proceeding to let any contract or contracts for the erection of the capitol building, based upon the so-called modified plans and specifications submitted by bidders.

4. General relief.

The defendants, in their answer, suggest and claim that they are not subject to the control of the executive branch of the government, and that the attorney general has no legal or equitable right to maintain his bill against them.

They admit the passage of the act of April 14, 1897; that the commissioners organized and employed Warren P. Laird, who submitted a programme which was adopted by the commissioners; that they publicly advertised to secure satisfactory plans for the buildings contemplated by said act of assembly; that about thirty architects submitted drawings; that the board of experts made report that none of the drawings submitted indicated a building which could be constructed within the limits of the appropriation, unless the materials used and the character of the workmanship were to be unworthy of the capital of the commonwealth; that for this reason, as also for unsatisfactory arrangements for the lighting of the senate and house of representatives, they rejected the eight designs recommended to them by the board of experts, and directed that all drawings submitted be returned to their respective authors; that Daniel H. Hastings, governor, one of the commissioners, protested against this

rejection as an act of bad faith, and they allege that such action was not in bad faith or in violation of any agreement made by the commissioners, but, upon the contrary, was required by the duty which the commissioners owed to the commonwealth, whose representatives they were, and they suggest that their action in this regard has been expressly approved by the Supreme Court of Pennsylvania.

They admit that they advertised for new plans; that a large number were submitted; that the same were carefully considered by Henry Ives Cobb, and were approved and adopted by the defendants as a majority of the commission; that the architect has prepared certain drawings, plans and specifications for the erection of the new capitol building, and they allege that they have acted in conformity with and as required by the several provisions of the said act of assembly.

They admit that they have advertised for proposals, as stated in the fifth paragraph of the plaintiff's bill, according to the plans and specifications prepared by said architect, and that, as printed in plaintiff's book, the specifications are correct; that the only legal authority for the erection of a capitol building is contained in the act of April 14, 1897, and they further admit that their powers as commissioners must be exercised in the manner and within the limitations provided in said act, which they aver they have not transcended.

They deny that the building proposed to be constructed under the said specifications will be readily combustible, but aver that the said specifications provide for a building which will be as nearly fireproof as possible, within the meaning of said act. They admit that the opening intended for a dome is required to be trussed over with timber trusses, to be covered by a board roof with felt, etc., and that the construction of a roof of this character and the omission of a dome for the present were necessitated by the limitation of the cost of the building, and they aver that such a roof will be as nearly fireproof as possible under the circumstances; that the floors proposed are good; doors, partitions and guard rails are substantial.

They allege that they still intend to ask for separate proposals, and award contracts for the heating, ventilation, lighting, plumbing, drainage and water supply of, and proper elevator service in, the building.

They admit that the money appropriated for the erection and construction of said building is required by law to be paid by the state treasurer, upon warrants drawn by the auditor general in the usual manner.

They aver that the said plans for said building and the specifications which they have received from the said architect do not relate to or require the erection and construction of any other building for any other purpose whatever, but that, when said building shall have been constructed in accordance with the plans and specifications they have thus adopted, it will be a building of such size and form as will, in their judgment, under the conditions and requirements of said act of assembly, be adapted to the present and future use of the general assembly, its officers, committees and employees.

They deny that the erection and construction of said building will cost $1,200,000, or that said building, when so completed, will require for its full use and adaptation to the purposes for which it is to be constructed, a large addition of a wing at each side of said building.

They deny that they ever intended to expend more money than the amount appropriated by the aforesaid act of assembly, or that they intend to leave the building in such a condition as to require additional expenditure.

They deny that the plans and specifications are for work of an initiatory character only, and that to complete the work will require the expenditure by the commonwealth of many millions of dollars. They also deny that to permit said work to proceed according to the plans and specifications would greatly damnify the commonwealth and impose burdens upon the taxpayers not contemplated by the act of assembly.

They admit that on February 7, 1898, the bids stated in plaintiff's bill, made upon the plans and specifications prepared by Henry Ives Cobb, were opened by the commission, and that the modifications referred to were submitted by said bidders under a provision in the specifications. They aver that they propose to carefully consider the said modifications, and unless it shall appear that there was a fair and proper competition as between the bidders no contract will be awarded, based either upon said bids or said modifications, but that in such case, new specifications will be required and new proposals asked for, and

no contract will be made without such competition as is required by the act of assembly.

The defendants' prayer was that the bill be dismissed.

On a motion for a preliminary injunction, SIMONTON, P. J., filed the following opinion:

As we have come to the conclusion that a preliminary injunction ought not to be granted, and as the act of assembly which gives the right of appeal where a motion for a preliminary injunction is denied provides that "all such appeals shall be heard by the Supreme Court in any district in which it may be in session, as provided in cases of equity originating in the Supreme Court . . . . And all cases shall be heard and determined as though said court had original jurisdiction in the premises and the application for injunction had been made to said court," we do not think it would serve any useful purpose to discuss this case at length. We shall, therefore, content ourselves with indicating briefly the reasons for our conclusions.

One of the allegations in the bill on which the motion for an injunction is based is that the specifications upon which the advertisement for bids for the construction of the capital building was founded call for an unfinished and incomplete structure, and that if it were built according to these specifications it would be incomplete and not habitable. This averment in the bill is sustained by the testimony of several witnesses, but the conclusion sought to be drawn from it is based on evident misapprehension. The defendants admit in their answer that the building would be incomplete if the construction were confined to these specifications and the contract to be based upon them, but they aver, and Mr. Cobb, their architect, testifies, that additional specifications are to be prepared and other contracts made for the remaining parts of the construction, all of which are to be in progress together, and to be finished at the same time.

Another averment in the bill is that the intent and meaning of the act of assembly was that a completed building should be erected for the use of the general assembly, its officers, committees and employees, and that in future, from time to time, as the financial condition of the state will admit, other buildings

are to be added necessary for executive and departmental purposes, but that the plans and specifications prepared for the commission by their architect provide for the incomplete construction of a large structure for the use, not only of the general assembly, but for executive and departmental purposes as well.

The defendants in their sworn answer aver that the act of assembly requires them not only to procure the construction of a new capitol building on or near the site of the old capitol building, in the city of Harrisburg, of such size and form as may, in their judgment, be adapted to the present and future use of the general assembly, its officers, committees and employees, but that it makes it the duty of the defendants to advise with and employ an architect and adopt plans for the construction of said building and such other buildings to be erected in the future as may be necessary for executive and departmental purposes. And they aver that they have adopted plans prepared by the architect for such buildings, and also a plan for the construction of the particular building which said act requires to be now constructed for legislative use, and that the plans and specifications which they have procured do not relate to, or require the erection and construction of, any other building except one which will be of such size and form as will, in their judgment, under the conditions and requirements of said act of assembly " be adapted to the present and future use of the general assembly, its officers, committees and employees."

The testimony shows that the only difference between the plan adopted by the commissioners and that originally adopted in what has been known as the programme is that the buildings to be erected in the future are to be physically connected with the building now to be erected for the use of the legislature, instead of being detached, as was contemplated in the original programme, and we find nothing in the act which in any degree controls this matter.

Another allegation in the bill is that the commissioners intended to contract for the expenditure of a large amount of money in excess of the sum of $550,000, in violation of the provision of the act of assembly which forbids them to contract for the expenditure of any larger sum. To this defendants answer,

and the testimony shows, that it is not their intention or purpose, and never has been, to enter into any contract or contracts for the erection and construction of said building, or any parts or portions thereof, in excess of the amount of money available under said act of assembly, and that it is not their purpose or intention to leave said building, when completed, in accordance with the plans and specifications approved and to be approved by them, in such condition as to require the expenditure of any additional money thereon in order to fit it for the convenient use and occupancy of the general assembly, its officers, committees and employees, and the testimony warrants us in believing that such is the fact, even were we not required to accept the sworn answer of the defendants to this effect.

Another of the allegations in the bill is that the defendants have invited and have received bids upon the plans and specifications prepared by their architect, and that in advertising for said bids they also called for and have received modified bids from a number of contractors, and that they propose and intend to let a contract to some one of the aforesaid bidders according to plans and specifications made by such bidder as modification of the plans and specifications upon which bids were invited, and that to let such a contract would be in violation of the provision of the act of assembly requiring two weeks' public notice by advertisement previous to awarding the contract for the construction of said building, and would be the acceptance of a bid without competition.

Defendants, in their sworn answer, admit that they have asked for and received such bids, that they are now in the hands of the architect, who is instructed to make a careful examination thereof and report to the commission the character of the modifications so suggested, and such other information as will enable the commission to determine whether or not these modifications are upon such lines as will suggest a proper competition, and that if it be found that they are not, no contract will be awarded upon either of said bids, but that modified specifications will be prepared and proper advertisement made and new bids received, and that they do not propose or intend to let any contract to any of the bidders, or to accept any bids or modifications without such competition as is required by the act of assembly.

Another allegation in the bill is that notwithstanding the act of assembly requires that the capitol building shall be made as nearly fireproof as possible, the plans and specifications upon which bids have been invited call for a building not fireproof but readily combustible, and a number of respects are specified in the bill on which it is alleged the building is not fireproof, among others, the roof and flooring and staircases. In respect to this the commissioners say in their sworn answer that they believe that under the restrictions and limitations imposed by the act of assembly in the matter of cost, size and accommodations required, the specifications provide for a building which, when completed, will be as nearly fireproof as possible within the meaning of the act. The architect of the commissioners testifies that on account of the restriction as to cost the only kinds of roof which could be selected would be either tar and gravel or tin, and that a tar and gravel roof, properly constructed, is not a dangerous roof on a building standing detached from other buildings, and that all portions of the building that are constructed of timber are to be coated with fireproof paint which will prevent their burning, and that in his opinion the building will be as nearly fireproof as the limitation of cost and the required size and accommodations to be furnished in the building will allow.

There can be no doubt that a building could be constructed which would be much more nearly fireproof than the building called for under these specifications, if the builder were not limited in the matter of expense ; but we are unable to see how a building which would meet the requirements of the one in question, with the cost limit attached, could be made more nearly fireproof than this, and we do not think the requirement that it shall be as nearly fireproof as possible is to be understood in an absolute sense, and not relatively to the other conditions, including that of cost.

On the specifications upon which the advertisements were issued and the bids received the word "temporary" occurs in a number of places, and it is alleged in the bill that this indicates that the work is to be of a temporary nature and to be replaced hereafter by other work which will require future appropriations. The architect, however, explains that "this contract is the initial contract, and there are future contracts necessary to

complete the building, and that the work marked " temporary " is in many cases superseded by work that is to be put in by other contractors, and that specifications are to be prepared and advertisements to be made and bids received for the stone carving, the fireproof painting, sewers and plumbing, gas piping, water supply, electric wire, elevators and elevator screens, vault doors, heating, ventilating, bells and tubes," and that the contracts for all these are to be executed during the same time that the contract for the general construction is under way, and all will be required to be completed at the same time ; and that when all the specifications are drawn and all the contracts to be advertised for are completed, which must be within the time limited by the act of assembly, the building will be complete and ready to be used for the purposes prescribed in the act.

After a careful consideration of the bill and the sworn answer of the commissioners, and an attentive hearing of the testimony produced at the hearing, we have been unable to find any evidence that the commissioners have done or intend to do any act which will endanger the rights or prejudice the interests of the commonwealth, such as would warrant the granting of a preliminary injunction, and thus delaying them in the prosecution of the work entrusted to and imposed upon them by the act.

The motion for a preliminary injunction is, therefore, refused.

*Error assigned* was the decree of the court.

*Henry C. McCormick,* attorney general, with him *Wilbur F. Reeder,* deputy attorney general, for appellant.—The act of assembly creating the commission clearly requires the erection of a single completed structure for the use of the general assembly, its officers, committees and employees, and that it be made as nearly fireproof as possible.

The act requires a completed building, and authorizes the commissioners to make a contract with the lowest responsible bidder who will undertake, with sufficient security to be approved by the commissioners, " to complete and deliver the same ready for occupancy and furnishing not later than November 15, 1898."

The commissioners shall not, in the erection of said new capitol building, including the architect's services, contract for any

expenditure in excess of the sum of $550,000 : McIntyre v. Perkins, 9 Phila. 484.

*Robert Snodgrass* and *Lyman D. Gilbert,* with them *John H. Weiss,* for appellees.—The building which the commission intends to erect will be a single, completed structure, for the use of the general assembly, its officers, committees and employees ; "as nearly fireproof as possible," under the requirements of the act of assembly of April 14, 1897 : Cope v. Hastings, 183 Pa. 300.

The commission intends that the building for the use of the general assembly, its officers, committees and employees shall be complete and ready for occupancy, and furnishing, not later than November 15, 1898.

The commission will not, in the erection of the new capitol building, contract for any expenditure, including the compensation of the architect, in excess of the sum of $550,000.

PER CURIAM, March 14, 1898 :

In Cope and Stewardson v. Hastings et al., 183 Pa. 300, referring to the powers and duties of the state capitol commission, it was said that " the location upon or near the site of the old capitol building, the Colonial style of architecture, and the cost, not to exceed $550,000," were fixed by the act, and were mandatory upon the commissioners and every one dealing with them. So, to a lesser extent was the fireproof character of the building, but everything else was left to the discretion of the commissioners under the general direction that the building should " in their judgment be adapted to the present and future use of the general assembly, its officers, committees and employees." The extent of the commissioners' authority, the nature of their duties, etc., having been definitively settled by our Brother MITCHELL, who wrote for the Court in those cases, they are no longer open questions ; and, until it is shown that the commissioners have exceeded the authority vested in them by the act of assembly, as thus construed by this Court, they should be permitted to proceed in the proper discharge of their duties without further delay.

A careful consideration of the record before us has led us all to the conclusion that, in the absence of sufficient proof to over-

come the legitimate effect of the defendants' responsive answers to the material averments of fact contained in the bill, as amended, there is nothing to justify the granting of a preliminary injunction. The controlling questions in this case have been so satisfactorily disposed of by the learned president of the common pleas that further discussion of any of them is unnecessary.

On his opinion, the decree denying the motion for a preliminary injunction is affirmed and the appeal is dismissed at appellant's costs.